UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

CARLOS OSORIO,                        :

                Petitioner,    :        **OPINION**

            - against -              :        05 Civ. 473 (DC)

JAMES CONWAY, Superintendent,        :
Attica Correctional Facility,
                                     :
            Respondent.              :

- - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**     CARLOS OSORIO
                Petitioner Pro Se
                99-A-2707
                Attica Correctional Facility
                P.O. Box 149
                Attica, NY  14011

                ROBERT T. JOHNSON, ESQ.
                District Attorney, Bronx County
                Attorney for Respondent
                    By: Rither Alabre, Esq.
                        Allen H. Saperstein, Esq.
                        Assistant District Attorneys
                198 East 161st Street
                Bronx, NY  10451

**CHIN, D.J.**

            Pro se petitioner Carlos Osorio petitions this Court

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Following a jury trial in the Supreme Court of New York, Bronx

County, petitioner was convicted on April 29, 1999 of burglary in

the first and second degree, robbery in the first and second

degree, unlawful imprisonment in the second degree, and

endangering the welfare of a child.  He was sentenced to

concurrent terms of imprisonment of twenty years for the first-

degree burglary and robbery counts, ten years for the second-

degree burglary and robbery counts, and one year for each of the unlawful imprisonment and endangering the welfare of a child counts.

Petitioner contests his conviction on the following grounds: (1) insufficient evidence; (2) failure to properly charge the jury on the pretrial identification; (3) improper admission of evidence; (4) prosecutorial misconduct; and (5) ineffective assistance of trial counsel.  For the reasons that follow, the petition is denied.

**BACKGROUND**

**I.    The Facts**

The following is a summary of the facts adduced at trial.

**A.    The Burglary**

On the morning of September 8, 1997, Rosa Cruz was at home with her eight-year-old son and six-year-old daughter.  Her son did not go to school that day due to a leg burn, and her daughter stayed home because she had a toothache.  (T1 447-49).[1] At approximately 11:20 a.m., Cruz heard a knock at the door. (Id. at 449).  She looked through the peephole and saw two men. One was a shorter, well-dressed, well-shaven man who held an ID. (Id. at 450-51, 514).  He stated in Spanish that he was a social worker from the city.  (Id. at 450, 456, 458, 514).  When Cruz

---

[1]    "T1" refers to the minutes of petitioner's trial dated November 30, 1998 through December 4, 1998.

opened the door, the shorter man asked her for the money that her husband owed him.  (Id. at 450-51, 457).  She told the two men that she did not owe them any money and instructed them to go to her husband's workplace.  (Id. at 457).  The shorter man then took Cruz to the kitchen, where he removed two rings and three chains from her body.  (Id. at 457, 463, 514-15).  Her daughter followed them while her son remained in bed.  (Id. at 458).  Meanwhile, the taller man went to a closet and took $300 out of a bible.  (Id. at 457, 459).  By this time, Cruz had observed the taller man's face.  (Id. at 523).

With his face approximately eighteen inches away from her, the taller man pointed a silver-plated pistol at Cruz's chest, while the shorter one held her hands behind her back. (Id. at 458-59, 525-26).  The taller man then forced Cruz to give him $300 from a handbag that was in a drawer.  (Id. at 461).  The men led Cruz to the bathroom and handcuffed her to a metal bar, telling her that they would be back.  (Id. at 464, 466, 516).

Cruz screamed for her daughter, who had been placed inside the bedroom with her brother by the taller man.  (Id. at 462-63).  Her daughter then came out of the bedroom and helped her remove the handcuffs.  (Id. at 465).  Once she freed herself from the pole, Cruz locked the front door of her apartment.  Due to her son's injury, however, Cruz had to leave him alone in the apartment while she took her daughter up the fire stairs.  (Id. at 465-67).  She knocked on a neighbor's door, and the neighbor called the police for her.  (Id. at 467, 517).

- 3 -

Cruz described the two men to the operator in Spanish. (T2 27-37).[2]  Both were Hispanic.  One was tall, skinny, and had a revolver, and the other wore a white shirt and black pants. (T1 519; T2 31-34).  She explained that she could not observe what the taller man was wearing because they "locked [her] up in the bathroom right off the bat."  (T2 33).  When the operator asked Cruz if either robber had a mustache, beard, or glasses, she responded that they did not.  (Id. at 34).  Cruz also stated that she did not know the two men.  (Id. at 521).  She told the operator that she was not injured but was concerned about her son because he was alone in the apartment.  (Id. at 32-33, 36, 37).

Police Officers Franco Basandella and Phillip Litro responded to a radio call about the robbery.  (T1 395-96).  When the officers arrived at the scene, Cruz was "hysterical" and "crying," and still had the handcuffs on one of her hands.  (Id. 396, 400).  Officer Basandella tried to calm her down, and removed the handcuffs.  (Id. at 400).  Cruz's son unlocked the door of her apartment and the two officers spoke to her with the help of Spanish-speaking police officers.  (Id. at 401, 407).

Detectives Ismael Hernandez and Christian Pena also responded to the scene.  (Id. at 635, 637).  At her apartment, Cruz told the detectives that the robbers were Hispanic and in their forties.  She also indicated that she recognized one of them from the neighborhood.  (Id. at 638-40).  The reports filled

---

[2]    "T2" refers to minutes of the petitioner's trial dated December 7, 1998 through December 8, 1998.

out by Hernandez and Pena were left blank for clothing and facial hair, except for one entry that described one of the perpetrators as having a mustache. (Id. at 677-78).

Subsequently, the officers brought Cruz to the precinct and showed her books containing photographs. (Id. at 639). Cruz said that none of the men in the photographs were the robbers; however, she stated that one of the men in the photographs looked like the taller man that robbed her home, because he had a "long face." (Id. at 473-74, 641). The man in the picture was identified as David Papparo. (Id. at 643). It was later discovered that this man had been incarcerated since April 10, 1996. (T2 55).

**B.    The Identification**

Shortly after the robbery, Cruz and her family moved out of their apartment. (T1 485). At approximately 2:30 p.m. on December 1, 1997, Cruz saw the petitioner, Carlos Osorio, at Colgate Avenue. (Id. at 485-86). She told her husband that Osorio was the man who had robbed their apartment. (Id. at 486). Cruz then called the police and Detective Angel Lopez responded. (Id. at 486-87, 548). After speaking with Cruz, Detective Lopez arrested petitioner. (Id. at 547-49, 551). At the time of his arrest, petitioner was wearing a black jacket, black jeans, and sneakers, and also had a mustache and goatee. (Id. at 554). He was not carrying a weapon or any of Cruz's property. (Id. at 560). At the precinct, Detective Lopez recorded petitioner's address as 1145 Evergreen Avenue. (Id. at 552-53). This was

approximately six blocks from the site of the robbery.  (Id. at 654).

## II.  Procedural History

### A.    The Indictment

On December 24, 1997, a grand jury in the Supreme Court, Bronx County, charged petitioner with committing burglary in the first and second degree, robbery in the first and second degree, criminal possession of stolen property in the fourth degree, unlawful imprisonment in the second degree, and two counts of endangering the welfare of a child.

### B.    The Suppression Hearing

On July 1, 1998, the Honorable Barbara Newman denied petitioner's suppression motion at a Wade/Dunaway hearing.  The court found probable cause for the arrest, and held that the identification was not impermissibly tainted by the activities of the police officers.  (WDH 48).[3]

At the conclusion of the suppression hearing, Justice Newman asked whether the pre-indictment plea offer to petitioner was for five years.  The People responded that they did not have an official offer, but that petitioner would "be facing a minimum of ten years as a predicate felon."  (Id. at 49).  Justice Newman then asked petitioner's trial counsel, whether there was a plea for under ten years that petitioner would accept.  After a pause

_____

[3]    "WDH" refers to the minutes of the Wade/Dunaway Hearing that took place on July 1, 1998.

following Justice Newman's request that counsel confer with
petitioner, counsel responded that his "client maintain[ed] his
innocence" and that he wanted to go to trial on this matter.
(Id. at 50).

   C.   **The Trial**

      1.   **Cross-Examination of Cruz**

         Cruz's direct testimony largely consisted of the facts
outlined above.  On cross, Cruz admitted that she was terrified
at the time of the robbery.  (T1 517).  In addition, when asked
whether she told the 911 operator that she knew one of the
robbers, Cruz did not provide a direct answer.  Instead, she
replied that she was not on the phone for long, and that she did
not give that information to the operator because her neighbor
did not let her talk on the phone.  (Id. at 521).

      2.   **Maritza Osorio's Testimony**

         Petitioner's sister, Maritza Osorio, was the only
defense witness.  (T3 3-5).[4]  She testified that her brother
lived with her and her children during the summer and in
September of 1997 at 1145 Evergreen Avenue.  (Id. at 3-4).  She
explained that petitioner had the same mustache and goatee during
September 1997 as he did that day in court.  (Id. at 4).  She
also testified that petitioner's physical appearance in court was
the same as it had been in September 1997, including a bump

_____

      [4]   "T3" refers to the transcript of the defense case on
December 7, 1998.

above his left eye and a missing upper left front tooth.  (<u>Id.</u> at
4-5).

### 3.   <u>The Prosecution's Summation</u>

In her summation, the prosecutor explained that the
question the jury had to decide was not whether Cruz remembered
the robber's face, but whether she will "ever forget his face."
(<u>Id.</u> at 99).  The prosecutor stated that Cruz thought the
robber's face was the last face that she and her children were
"going to ever see on this earth."  (<u>Id.</u> at 100).  She then
characterized the crime as "savage, terrible, horrible" and
stated that the robber "didn't just go in there and take what he
needed," but instead "had to take her small child from her."
(<u>Id.</u>).  Furthermore, the prosecutor contended that defense
counsel's questioning of the reliability of Cruz's identification
was unfair because it suggested that "anyone who has been in a
traumatic experience . . . [is] unreliable."  (<u>Id.</u> at 101).

The prosecutor stated that Cruz was "credible,
reliable, and accurate."  (<u>Id.</u>).  She asked the jury to think of
Cruz's thoughts while the robbery was taking place.  (<u>Id.</u> at 105-
6).  The prosecutor suggested that Cruz was likely to remember
the robber's face because it was the "only thing odd, the only
thing out of place and horrible" in the otherwise familiar
environment of her home.  (<u>Id.</u> at 106).  She also explained that
the robbery took place during the daytime and that the robber did
not attempt to hide his face.  Furthermore, the robber's face was
only eighteen inches away from Cruz's face, and she also had an

opportunity to watch how his face moved because the robber spoke to her.  (Id. at 107).

Finally, the prosecutor concluded by discussing the two counts of endangering the welfare of a child.  She asked the jury to imagine Cruz's son sitting on the bed, unable to move, while the robbery was taking place.  (Id. at 125).  She reminded the jury that Cruz's son was left alone in the apartment while Cruz went to get help.  (Id.).  She also recalled Cruz's testimony as to the effects of the robbery on her children.  (Id.).[5]

### 4.  The Identification Charge

At the charge conference, defense counsel objected to the court's proposed jury charge.  (T3 60).  Defense counsel requested that the court ask the jury to consider "the lapse during the commission of the crime" and "whether or not the witness had an unobstructed view of the perpetrator."  (Id. at 61).  Furthermore, defense counsel asked that the instruction include a consideration of "the witness's opportunity during the commission of the crime to observe and remember the facial features, the body size, the hair, and clothing of the perpetrator.  [They] must also ask [themselves] did the witness have an adequate opportunity to observe and remember the perpetrator."  (Id. at 62).  Defense counsel also requested that the court use several other sections of the Criminal Jury

---

[5]    Although trial counsel objected several times at summation, his objections did not refer to the prosecutor's remarks described above.

Instruction charge 10.01.  (Id. at 60-66, 1 CJI [NY] 10.01 at
584-85).  Nonetheless, the court determined that its original
charge fully covered the relevant points raised by defense
counsel, and consequently denied defense counsel's requests.
(Id. at 67).

### 5.  **Verdict and Sentence**

The jury found petitioner guilty on all charges.  (Id.
at 181-82).  He was sentenced on April 29, 1999 to concurrent
prison terms of twenty years each for the first-degree burglary
and robbery counts; ten years each on the second-degree burglary
and robbery counts; and one year for each of the unlawful
imprisonment and endangering the welfare of a child counts.

### D.  **The Appeals**

On September 18, 2003, the Appellate Division, First
Department, vacated the conviction for the count of burglary in
the second degree as a lesser included offense of burglary in the
first degree, but otherwise affirmed the judgment.  People v.
Osorio, 308 A.D.2d 376 (1st Dep't 2003).  Petitioner did not
raise an ineffective assistance of counsel claim on appeal.  The
Court of Appeals denied petitioner's application for leave to
appeal on November 25, 2003.  People v. Osorio, 1 N.Y.3d 541
(2003).

### E.  **The Instant Petition**

Osorio, acting pro se, filed a petition for a writ of
habeas corpus in this Court on January 14, 2005.  On February 18,
2005, the Court granted petitioner's request for a stay of his

petition to permit him to exhaust his state remedies concerning his ineffective assistance of counsel claim.

### F.    **The § 440.10 Motion**

In March 2005, petitioner asked the Bronx Supreme Court to vacate his conviction, pursuant to N.Y. Crim. Proc. Law § 440.10, on the ground that his counsel had been ineffective. Petitioner provided affidavits and letters, stating that his counsel (1) did not properly inform him that he was facing a maximum sentence of twenty-five years; (2) failed to convey the particulars of a plea offer; and (3) failed to call the alibi witness suggested by petitioner.  The People contended that petitioner's claim was procedurally barred by N.Y. Crim. Proc. Law § 440.30(4)(b), but consented to petitioner's request for a hearing pursuant to N.Y. Crim. Proc. Law § 440.30(5).

The Bronx Supreme Court conducted a hearing to resolve the factual questions regarding trial counsel's advice to petitioner concerning the plea offers and alibi witness. (Interim and Decision Order, November 17, 2005).  Petitioner, trial counsel, and Lluesma (the alleged alibi witness) took the stand at the March 10, 2006 hearing.

Petitioner testified that while trial counsel did inform him that the People were offering him five years in exchange for a guilty plea, counsel did not have any discussions with him or make any suggestions to him as to whether he should

take the plea.  (PJH 10-11).[6]  Although petitioner expressed his
desire to testify before the Grand Jury, counsel did not give
petitioner any advice or recommendation as to whether he should
testify.  (Id. at 11).  Petitioner testified that after the
indictment, he asked counsel how much time he was facing and
counsel responded that he "was looking at ten years." (Id. at
12).  Petitioner also explained that counsel never told him that
he was facing twenty-five years as a predicate felon.  (Id.).  He
testified that had he known that he was facing a twenty-five year
maximum sentence, he would have accepted the plea agreement.
(Id. at 14).

        In addition, petitioner was asked whether Justice
Newman had given him an opportunity to discuss with counsel the
plea offers extended to him by the People.  Petitioner responded
that he remembered that Justice Newman asked if counsel wanted to
take petitioner to a room to talk, but that counsel asked only
whether petitioner wanted to "cop out." (Id. at 19).  Petitioner
also testified that he never asked counsel "to explain anything
to [him] regarding [his] sentence . . . or what [he] faced," or
informed counsel that he was confused.  (Id. at 20).

        Trial counsel testified that he had discussions with
the prosecutor about an offer of five years in exchange for a
guilty plea.  (Id. at 24).  Counsel explained that prior to the
indictment, he conveyed both the five-year plea offer to

---

        [6]    "PJH" refers to the minutes of the post-judgment
hearing that took place on March 10, 2006.

petitioner as well as the twenty-five year maximum sentence. (Id. at 24-25).  When asked how many times he had discussed with petitioner the possibility of accepting the plea offer, counsel said that "he believed there were two," but remembered a specific instance at the pre-trial hearing where petitioner "had an opportunity via the intervention of the judge to seek a plea and [petitioner] declined."  (Id. at 27).

On cross-examination, counsel testified that he was affiliated with the Bronx Defenders when he represented petitioner, and that he had been practicing criminal defense law for approximately twenty years.  (Id. at 40).  When asked whether he remembered what he told petitioner regarding the plea offer, counsel stated that he told petitioner that he "thought five years was a very reasonable offer given the allegations . . . and that [petitioner] should really consider five years."  (Id. at 43).  Petitioner, nonetheless, maintained his innocence throughout the trial.  (Id. at 44).

Vincent Lluesma, a roof repairman, had known petitioner thirty to forty years and had hired petitioner for a number of jobs throughout the years.  (Id. at 145-46, 202).  He testified that on the day of the robbery, he and petitioner were working on Ms. Lopez's roof.  (Id. at 147).  Lluesma further testified that on that day, they also took petitioner's nephews to Toys-R-Us and purchased a bike.  (Id.).  Petitioner's sister gave the receipt for the bike to counsel.  (Id. at 151).  Lluesma testified that while Ms. Lopez claimed that he and petitioner did not work on

her roof on September 8, 1997, her neighbor across the street informed him that he did remember seeing them working on her roof.  (Id. at  162-64).

On September 8, 2006, the Honorable Barbara F. Newman of the Supreme Court, Bronx County, denied petitioner's motion to vacate his judgment of conviction on the ground of ineffective assistance of trial counsel.  The court credited the testimony of trial counsel and made the following findings: (1) petitioner failed to prove every fact essential to support his motion by a preponderance of the evidence (Id. at 10); and (2) petitioner did not establish that he was deprived of his constitutional right of effective assistance of counsel.  (D 7[7]; Id. at 13).

On December 28, 2006, the Appellate Division denied petitioner's leave application.

G.    **Consideration of the Petition**

On January 26, 2007, I issued an order holding that petitioner had exhausted his ineffective assistance of counsel claim, and that this claim could be included in his habeas petition.  On May 4, 2007, I denied petitioner's request for a stay of this case so that he could file a writ of error coram nobis with the Appellate Division to argue ineffective assistance of appellate counsel.  My consideration of the petition followed.

---

[7]    "D" refers to the September 8, 2006 Decision and Order from the Bronx County Supreme Court.

## DISCUSSION

## I.   Federal Review of State Convictions

The Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA") "placed a new restriction on the power of the
federal courts to grant writs of habeas corpus to state
prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000).  AEDPA
sets forth new standards of review that make it more difficult
for a habeas petitioner to obtain federal relief from a state
conviction.  It provides that:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to any
> judgment of a state court shall not be
> granted with respect to any claim that was
> adjudicated on the merits unless the
> adjudication of the claim:
>
> (1) resulted in a decision that was contrary
> to, or involved in an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of
> the United States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d)(1), (2).

"[C]learly established Federal law in § 2254(d)(1)
refers to the holdings, as opposed to the dicta," of Supreme
Court decisions as of the time of the relevant state-court
decision. Carey v. Musladin, 127 S. Ct. 649, 653 (2006) (quoting
Williams, 529 U.S. at 412) (internal quotations omitted).
Moreover, AEDPA has been interpreted to require a petitioner to
show not only that clearly established federal law was

erroneously or incorrectly applied, but that the application was unreasonable.  See Williams, 529 U.S. at 411; see also Lockyer v. Andrade, 538 U.S. 63, 66 (2003); Bell v. Cone, 535 U.S. 685, 688 (2002).  As the Second Circuit has explained, "[a] state court decision is 'contrary to' Supreme Court precedent only if it either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and arrives at [the opposite result]." Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001) (quoting Williams, 529 U.S. at 405).  The standards set forth by AEDPA apply to all habeas petitions filed after the state's effective date of April 24, 1996.  See Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001) (citing Williams, 529 U.S. at 402).

AEDPA also specifies the applicable standard for federal review of state court factual findings: a petitioner must demonstrate that a decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).  In habeas proceedings, a "determination for a factual issue made by a state court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting this presumption "by clear and convincing evidence."  Id.

## II.  **The Merits**

Petitioner raises five grounds for federal habeas relief: (1) insufficient evidence to support his conviction; (2)

failure to properly charge the jury on the pretrial
identification; (3) improper admission of evidence; (4)
prosecutorial misconduct; and (5) ineffective assistance of
counsel.  I discuss each ground in turn.

### A.    Insufficiency of Evidence

#### 1.    Applicable Law

An insufficiency of the evidence claim will be denied
if "after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the
essential elements of a crime beyond a reasonable doubt."
Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Moreover, "the
findings in the state court are presumptively correct and
entitled to a high degree of deference as that court was in the
best position to view the credibility of the witnesses and all of
the facts as they were adduced [at trial]."  Santos v. Zon, 206
F. Supp. 2d 585, 589 (S.D.N.Y. 2002) (quoting Smithwick v.
Walker, 758 F. Supp. 178, 184 (S.D.N.Y. 1991)).  Accordingly, a
petitioner challenging a decision based on sufficiency of the
evidence "bears a very heavy burden."  Diaz v. Greiner, 110 F.
Supp. 2d 225, 233 (S.D.N.Y. 2000) (quoting United States v.
Rivalta, 892 F.2d 223, 227 (2d Cir. 1989)).

Because the state court's findings are presumptively
correct, a federal habeas court does not weigh the evidence or
determine the credibility of the witnesses.  Instead, the jurors
are responsible for assessing a witness's credibility after
evaluating any inconsistencies in her testimony.  Means v.

Barkley, No. 98 Civ. 7603 (DLC), 2000 WL 5020, at *4 (S.D.N.Y. Jan. 4, 2000).  Thus, an "eyewitness's testimony is unbelievable as a matter of law only if 'no reasonable juror could believe [her].'"  Bonilla v. Portuondo, No. 00 Civ. 2369 (JGK), 2004 WL 1782174, at *3-4 (S.D.N.Y. Aug. 9, 2004) (quoting United States v. Rodriguez, 702 F.2d 38, 41-43 (2d Cir. 1983)).  Courts have found that an eyewitness's testimony is sufficient even when the witness's descriptions are inconsistent.  Id. (eyewitness testimony sufficient for a conviction even where the witness failed to mention the assailant's mustache or other facial details).  Such issues are left for the jury to resolve and are "precisely the type[s] of factual determination[s] and credibility evaluation[s] that the Supreme Court has precluded in reviewing habeas corpus petitions."  Means, 2000 WL 5020, at *4 (quoting Banks v. People, No. 94 Civ. 555 (DLC), 1994 WL 661100, at *2 (S.D.N.Y. Nov. 22, 1994)).[8]

### 2.  Application

Here, petitioner does not argue that there was insufficient evidence to prove the elements of the crimes.  Rather, petitioner contends that the verdict rested solely on Cruz's testimony, and that her testimony was not sufficient to establish that he was one of the robbers.  Specifically,

---

[8]    Nonetheless, the reliability of eyewitness testimony is often criticized.  See Kampshoff v. Smith, 698 F.2d 581 (2d Cir. 1983).  Critics argue that the "proverbially untrustworthy" process of identifying strangers, coupled with juries' tendencies to overlook the inconsistencies in eyewitness testimony, leads to erroneous convictions.  Id. at 585 (quoting from F. Frankfurter, The Case of Sacco and Vanzetti, Pg. 30, 1927).

petitioner alleges that while Cruz may have had significant interaction with the first robber, her opportunity to view the taller robber was limited to a brief glance in the hallway. Furthermore, petitioner contends that Cruz was terrified and preoccupied with her children's safety, and thus did not carefully observe the taller robber.

Nonetheless, viewing the evidence in the light most favorable to the prosecution, I conclude that a rational jury could find beyond a reasonable doubt that petitioner was one of the robbers. Indeed, Cruz's testimony showed that she: (1) observed the taller robber several times throughout the course of the robbery; (2) recognized him from the neighborhood; and (3) identified petitioner twice -- once three months after the robbery, and a second time while testifying in court.

To be sure, Cruz's testimony shows that she had ample opportunity to identify the robber both during the robbery and to confirm his identity afterwards. For example, during the robbery, petitioner's face was merely eighteen inches away from her as he pointed a gun to her chest. (T1 458-59, 525-26). In addition, during the week prior to the robbery, Cruz saw petitioner two or three times. (Id. at 453-54). She told the police officers that she had seen petitioner enter the basement of a private house on two or three occasions where her husband had parked his van for approximately eight months, and that this was a house that she would visit three times a week. (Id. at 454-55, 495-97, 638-40).

- 19 -

Moreover, nothing about the circumstances of Cruz's identification of the petitioner renders her testimony unreasonable or unbelievable.  While petitioner asks the Court to place greater weight on Cruz's testimony that she was "terrified," as well as petitioner's argument that Cruz had a limited opportunity to view the taller robber, the Court's function is not to weigh the evidence.  In short, Cruz's testimony established that she had multiple opportunities to view the taller robber, and that she did indeed identify petitioner as the taller robber on several occasions.  A reasonable juror therefore could have concluded that petitioner was one of the robbers.  The jury's verdict was not based on "an unreasonable determination of the facts" in light of the evidence presented.  28 U.S.C. § 2254(d)(2).

**B.    Failure to Properly Charge the Jury on the Pretrial Identification**

    1.    <u>Applicable Law</u>

A federal court reviews errors in state jury charges only where the instruction violated a constitutional right.  <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973).  The question, then, is whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  <u>Id.</u> at 147.  A judge's "single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  <u>Id.</u> at 146-47.

Moreover, claims that a judge left out certain instructions are "less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). As long as the trial judge gave a "general instruction on weighing witnesses' credibility and . . . state[d] that identification must be proven beyond a reasonable doubt, [she] has made an accurate statement of the law." Aparicio v. Artuz, 269 F. 3d 78, 99 (2d Cir. 2001) (quoting People v. Whalen, 59 N.Y.2d 273, 278-79.

## 2. **Application**

Petitioner claims that the court should have advised the jury to consider the accuracy of Cruz's initial descriptions of the perpetrators. He argues that this refusal deprived him of his right to a fair trial.

Here, the trial court's jury charge violated neither petitioner's right to a fair trial nor any other constitutional right. The charge addressed all of the relevant considerations, including the following, regarding the pre-trial identification: (1) the truthfulness and accuracy of the identification testimony; (2) the witness's opportunity to observe the robber; (3) the "witness's physical and emotional condition at the time of the observation"; (4) whether the "person who committed the crime had any distinctive physical characteristics"; (5) whether the witness knew the defendant before; and (6) the fact that the trial took place 15 months after the alleged crime. (Id. at 143-46). The court also explained that the "witness's prior

identification of the defendant should be nevertheless scrutinized . . . with great care," and that the People had the burden of proving identification beyond a reasonable doubt.  (Id. at 146-48).  Thus, the court's jury instructions adequately addressed the factors the jury should weigh in evaluating the accuracy of Cruz's identification of petitioner.

Even if the court's failure to issue the additional requested charge was improper, the court's charge, viewed in its entirety, communicated to the jury the relevant identification issues.  The court properly stated that the identification had to be proven beyond a reasonable doubt and thus it gave an accurate statement of the law.  Aparicio, 269 F.3d at 99.

### C.     Improper Admission of Evidence

#### 1.     Applicable Law

To demonstrate that the admission of evidence by a state trial court is improper and constitutes grounds for federal habeas relief, a petitioner must: (1) prove that the state court's decision "violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional"; (2) assert that the "state evidentiary error violated an identifiable constitutional right";  and (3) show that the error "deprived [him] of a fundamentally fair trial."  Roman v. Filion, No. 04 Civ. 8022 (KMW) (AJP), 2005 WL 1383167, at *26 (S.D.N.Y. Jun. 10, 2005)(quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988)).

For an "erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1985)).  In assessing materiality, the court must view the evidence "objectively in light of the entire record before the jury," Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985), and determine whether the alleged "prejudicial evidence is 'probative of [an] essential element' in the case." Dunnigan, 137 F.3d at 125 (quoting Estelle v. McGuire, 502 U.S. 62, 69 (1991)).

Admissibility of hearsay evidence and "bolstering" are matters of state law and therefore are not cognizable under federal habeas review. Simpson v. Donnelly, No. 00 Civ. 3284, 2003 WL 660832, at *7 (S.D.N.Y. Feb. 27, 2003) (citing Morales v. Portuondo, No. 97 Civ. 2559 (DC), 1999 WL 608773, at *3 (S.D.N.Y. Aug. 12, 1999)); Styles v. Van Zandt, No. 94 Civ. 1863 (MGC), 1995 WL 326445, at *5 (S.D.N.Y. May 31, 1995), aff'd mem., 101 F.3d 684 (2d Cir. 1996), cert. denied, 519 U.S. 936 (1996) (defines bolstering as "permit[ting] an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification occurred"). Review is permitted only where an improper admission of evidence had a "substantial effect or influence in determining the jury's

verdict." <u>Simpson</u>, 2003 WL 660832, at *7 (quoting <u>Morales</u>, 199 WL 608773, at *3).  Conversely, "evidence that assists the jury in evaluating the witness's opportunity to observe at the time of the crime, and the reliability of her memory at the time of the corporeal identification" is admissible because it serves a "nonhearsay purpose." <u>People v. Huertas</u>, 75 N.Y.2d 487, 493 (1990).

>     2.   **Application**

Petitioner argues that the court erred by: (1) improperly admitting Cruz's testimony that she told the police and her husband that she recognized the robber; (2) permitting the police officers to repeat that testimony, which, in turn, bolstered Cruz's identification testimony; and (3) permitting Cruz to testify about how the robbery affected her children, as "the evidence was more prejudicial than probative" (Brief for Defendant-Appellant, <u>People v. Osorio</u> 39).  I discuss the arguments in turn.

>     a.   **Cruz's Statements to Her Husband and the Police**

On direct, Cruz testified that she told the police and her husband that she recognized the taller robber.  (T1 470, 482).  Petitioner contends that the court improperly admitted Cruz's out-of-court statement for its truth.

The argument is rejected.  First, admissibility of hearsay evidence is generally a matter of state law not cognizable under federal habeas review.  <u>Simpson</u>, 2003 WL 660832,

at *7 (citing <u>Morales</u>, 1999 WL 608773, at *3). Second, even
assuming the claim is cognizable, Cruz's testimony was probative
of her opportunity to observe petitioner during the crime and her
reliability in remembering him. Her statements confirmed
Detective Hernandez's testimony that Cruz had told him she
recognized the taller robber. (T1 638-640). Consequently, her
testimony served the "nonhearsay purpose" of refuting
petitioner's allegations of inconsistency, and was thus properly
admitted under <u>Huertas</u>. <u>Huertas</u>, 75 N.Y.2d at 493.

### b.   <u>Improper Bolstering</u>

Like the admissibility of hearsay evidence, bolstering
is also a matter of state law that is generally not cognizable on
federal habeas review. <u>Styles</u>, 1995 WL 326445, at *5.
Nevertheless, the state trial court properly admitted the police
officers' testimony. Petitioner argued that Cruz's
testimony was inconsistent, and pointed to Cruz's failure to
inform the 911 operator that she recognized the taller robber,
and her later accounts to the police that she knew the taller
robber. The police officers' testimony was therefore admissible
to demonstrate the consistency of Cruz's testimony. <u>See, e.g.,</u>
<u>Diaz v. Greiner</u>, 110 F. Supp. 2d 225, 234 (S.D.N.Y. 2000).

### c.   <u>Evidence Regarding the Effects of the Robbery on Cruz's Children</u>

Petitioner claims that the evidence about the negative
effects the robbery had on Cruz's children lacked any "probative
value" and was "inflammatory" and "unnecessary." (Brief for

Defendant-Appellant, People v. Osorio 40).  I disagree.  New York law for endangerment of the welfare of a child requires that a prosecutor show that the defendant "knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child."  N.Y. Penal Law §260.10 (McKinney 2006).  Here, petitioner was charged with endangering the welfare of a child, and Cruz's testimony with respect to both her children was necessary to establish that petitioner acted in a manner likely to be injurious to the mental and moral welfare of her children. (T1 533).  Thus, the trial court properly admitted the evidence.

### D.    **Prosecutorial Misconduct**

#### 1.    **Applicable Law**

While a "prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury," it is "impossible to expect that a criminal trial shall be conducted without some showing of feeling; the stakes are high, and the participants are inevitably charged with emotion."  United States v. Young, 470 U.S. 1, 8, 10 (1985) (quoting the ABA Standards for Criminal Justice 3-4.8 (2d ed. 1980) and United States v. Wexler, 79 F.2d 526, 529-30 (2d Cir. 1935)).

To establish prosecutorial misconduct, petitioner must show that the prosecutor's comments were "so egregious as to violate the defendant's due process rights."  Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998); see also Floyd v. Meachum, 907 F.2d 347, 351 (2d Cir. 1990) (citation and quotation omitted).  Thus, the remarks must be "so prejudicial that they

render[] the trial in question fundamentally unfair." Floyd, 907
F.2d at 355).  Moreover, the remarks "must be examined within the
context of the trial to determine whether the prosecutor's
behavior amounted to prejudicial error." Young, 470 U.S. at 12.

Accordingly, the Second Circuit applies a three-part
test when considering whether prosecutorial misconduct was so
prejudicial as to deprive a defendant of a fair trial: (1) the
severity of the misconduct; (2) the measures adopted to cure the
misconduct; and (3) the certainty of conviction absent the
misconduct. United States v. Elias, 285 F.3d 183, 190 (2d Cir.
2002).

As to the first part of the test, courts have
overturned convictions where prosecutors, in summation,
repeatedly insert prejudicial comments that were not supported by
the evidence. See, e.g., Lee v. Bennett, 927 F. Supp. 97, 105-06
(S.D.N.Y.), aff'd, 104 F.3d 349 (2d Cir. 1996).
In contrast, "statements during summation are permissible if they
constitute a 'fair comment on the evidence' at trial and
reasonable inference therefrom, or a 'fair response to remarks
made by the defense counsel during summation.'" Roman v. Filion,
No. 04 Civ. 8022 (KMW) (AJP), 2005 WL 1383167, at *26 (S.D.N.Y.
June 10, 2005)(quoting People v. Perez, 794 N.Y.S.2d 439, 440 (2d
Dep't 2005)).  Courts will not find prejudice where the
prosecutor's offending comments were simply an "aberration in an
otherwise fair proceeding." Elias, 285 F.3d at 191.  Regarding
the second part of the test, a limiting instruction by the judge

during the jury charge can cure the prosecutorial misconduct. Id. at 192.  As to the third part of the test, a petitioner must show that he would not have been convicted but for prosecutor's misconduct.  Id.

### 2.  **Application**

Petitioner argues that the prosecutor violated his constitutional right to fair trial by repeatedly attempting to "inject sympathy for the victim in her summations," including, for example, that Cruz would never forget petitioner's face, and that Cruz thought petitioner's face was the last face that she and her children "were ever going to see on this earth."  (T3 99-100).  Petitioner also claims that the prosecutor inappropriately "vouched" for Cruz's credibility.  (T3 101).  Finally, petitioner asserts that the prosecution "mischaracterized defense counsel's summation in an attempt to portray the defense as pitiless." (Brief for Defendant-Appellant, People v. Osorio 41-48).

First, contrary to petitioner's assertions, none of the prosecutor's statements or actions were improper, as they were based on inferences fairly drawn from the evidence presented at trial.  The jury heard the testimony that petitioner pointed a gun at the victim's chest, robbed her in front of her children, and then placed her daughter in another room while they handcuffed her to a pole in the bathroom.  Thus, the allegedly inflammatory comments were all fairly drawn from the evidence.

Second, the prosecutor's arguments with respect to Cruz's credibility were merely a response to defense counsel's

attacks on her reliability in both his cross-examination and summation. (T3 102-4, 116; T1 89-93, 96-97).

Third, the prosecutor's characterizations of defense counsel's summation were appropriate. For example, by referring to the traumatic memories of a Vietnam veteran and asking Cruz whether she was "terrified" during the robbery, defense counsel implied that Cruz's identification was unreliable due to her emotional state. (T3 81-82, T1 517). Thus, the prosecutor was merely responding to these suggestions of unreliability.

Finally, petitioner argues that the prosecutor improperly asserted that defense counsel had deliberately misled the jury when he left out portions of the 911 tape during his summation. This argument fails. The prosecutor's summation simply informed the jury that defense counsel left out segments of the tape that were favorable to the prosecution. Accordingly, the prosecutor's statements were derived from the evidence and in response to the defense's strategy.

Nonetheless, even assuming that the statements were improper, the comments were not so egregious as to violate petitioner's right to due process. First, as to the severity of the prosecutor's comments, the allegedly prejudicial statements were a minor part of a long trial and were isolated incidents that did not undermine the overall fairness of the trial. Floyd, 907 F.2d at 351. Second, the trial court mitigated any prejudice by instructing the jury that "what the lawyers say is not evidence" and that the jury could "disregard [either lawyer's

- 29 -

analysis of the facts or the inferences or conclusions] that it
finds are illogical or not warranted by the evidence." (T3 80).
Third, petitioner fails to show that he would not have been
convicted but for the prosecutor's statements at summation.
Elias, 285 F.3d at 190.

        In short, the prosecutor's arguments were supported by
the evidence and were a proper response to defense counsel's
arguments. While some of the statements were charged with
emotion, they were not inappropriately so. Moreover, in light of
the evidence, even if the prosecutor had not made the comments in
question, I am not convinced that a reasonable jury would have
reached a different result. Petitioner's request for relief on
this ground is therefore denied.

**E.    Ineffective Assistance of Trial Counsel**

        Petitioner asserts two claims of ineffective assistance
of counsel in violation of the Sixth Amendment. First, he
alleges that his counsel failed to convey to him (a) the People's
pre-indictment offer of five years imprisonment in exchange for a
guilty plea and (b) the People's pre-trial offer of ten years
imprisonment for a guilty plea. Furthermore, petitioner argues
that his counsel neglected to inform him that he was facing a
maximum sentence of twenty-five years, and that this error led
him to reject the plea offers that he would have otherwise
accepted if his counsel had advised him correctly. Second,
petitioner also claims that counsel was ineffective because he
did not present an alibi defense.

1.    **Failure to Convey Plea Offers and Maximum Possible Sentence**

    a.    **Applicable Law**

    To prove ineffective assistance of counsel, petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) he was prejudiced by counsel's deficient performance, _i.e.,_ "but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland v. Washington, 466 U.S. 668, 686-88 (1984). Under the reasonableness standard, perfection is not required of counsel. Strickland, 466 U.S. at 688-89. The reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance'" and "'might be considered sound trial strategy,'" bearing in mind that "'[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689); Strickland, 466 U.S. at 689-90 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955).

    An attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the plea offer, may constitute constitutionally deficient assistance. See, e.g., Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999) (defense counsel grossly underestimated defendant's

potential maximum sentence); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) ("defense counsel in a criminal case must advise his client of the merits of the government's case, of what plea counsel recommends, and of the likely results at trial").

To prevail on such a claim, petitioner must show that (1) the attorney failed to communicate a plea offer or provide adequate advice about the plea and sentencing exposure; and (2) there is a reasonable probability that but for the attorney's deficient performance, petitioner would have accepted the plea offer. See Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000); Cullen, 194 F.3d at 404.

A petitioner claiming ineffective assistance of counsel on this basis must provide objective evidence, beyond his own "self-serving, post-conviction testimony," that he would have pled guilty had he received proper advice. Gordon, 156 F.3d at 380-81. Objective evidence may include a disparity between the plea offers and the actual sentence, and whether the plea offers were stated in petitioner's presence in open court. Cullen, 194 F.3d at 407; Alexander v. Walker, No. 03 Civ. 8440 (NRB), 2004 WL 1857575, at *6 (S.D.N.Y. Aug. 19, 2004); see also Custodio v. United States, 945 F. Supp. 575, 579 (S.D.N.Y. 1996) (concluding that defendant's "belated claim that he would have pleaded guilty is frivolous" where defendant continued to maintain his innocence both during and after trial).

b.    **Application**

Petitioner cannot prevail on this claim as the record shows that: (1) counsel did inform petitioner of the plea offers and of the twenty-five year maximum sentence; and (2) petitioner would not have accepted any of those offers as he continued to maintain his innocence throughout the proceedings.

First, prior to the indictment, counsel conveyed both the five-year plea offer to petitioner as well as the fact that petitioner could face a twenty-five year maximum sentence.  (PJH 24-25).  Counsel testified that because petitioner was charged with "B felonies, [he] told [petitioner] he would get up to twenty-five years" after trial.  (Id. at 30, 45).  He described the offer to petitioner as one that was "very reasonable" and "very low" considering petitioner's criminal history and the seriousness of the charges.  (Id. at 43).  Counsel even recommended they adjourn for two to three days so that petitioner could consider the plea offer.  (Id. at 43-44).  The state court accepted this testimony.

Second, the People offered a sentence of ten years in exchange for a guilty plea post-indictment.  Petitioner, however, remained "adamant" about his innocence.  (Id. at 27-28, 44).

Third, the record shows that the petitioner maintained his innocence throughout and would not have accepted the plea offers.  For instance, the pre-trial hearing transcript establishes that petitioner was present in court on July 1998, when (1) the court stated that the pre-indictment offer to

petitioner was five years; (2) the People offered a ten-year recommended sentence; (3) the court asked counsel "if there [was] a sentence less than ten years that [petitioner] would accept" in exchange for a guilty plea; and (4) provided a moment for counsel to confer with petitioner. (Id. at 49-50).  After a pause following the court's request, counsel responded that his "client maintains his innocence and he would like to go to trial on this matter." (Id. at 50).  Thus, the record is replete with evidence showing that counsel informed petitioner of the plea offers, and that petitioner refused those offers by maintaining his innocence.

Fourth, even though there is a disparity of fifteen to twenty years between the plea offers and the actual sentence, the disparity is the result of petitioner's decision to reject the plea offer.  Petitioner persisted in his assertions of innocence and the evidence showed that petitioner was informed of the plea offers.  Petitioner's testimony at the Post-Judgment Hearing indicated that petitioner maintained his innocence at that hearing, and also during all of his discussions with counsel. (PJH 17-18).

As petitioner's claims are unsupported by the record and petitioner has not proven that he was willing to accept a plea offer, I conclude that petitioner has failed to prove counsel's performance fell below the constitutional standard for effective assistance of counsel.

2.    **Failure to Present an Alibi Defense**

a.    **Applicable Law**

To prove ineffective assistance of counsel on these grounds, petitioner must demonstrate that counsel's decision not to prepare an alibi defense was strategically unsound, unreasonable, and prejudicial under Strickland.  466 U.S. at 668, 686-88 (1984).  Counsel is not required to present every nonfrivolous defense, but instead, should "winnow out weaker arguments" and select witnesses and evidence that reflect counsel's strategy.  Jones v. Barnes, 463 U.S. 745 (1983); see, e.g., Johnson v. Mann, No. 92 Civ. 1909 (TPGO), 1993 WL 127954, at *1 (S.D.N.Y. Apr. 20, 1993) (where the court found that "as to the alibi issue, counsel made the strategic decision, in the face of a strong prosecution case, to attack the credibility of a victim who had specifically identified petitioner rather than to reply on the inherent suspect testimony of family members").

Accordingly, the reviewing court must defer to counsel's judgments when evaluating counsel's "tactical decision" not to investigate an alibi defense.  Strickland, 466 U.S. at 691.  Counsel makes a strategically sound decision to exclude an alibi defense where a "purported alibi would seem so incredible to the jury . . . and her testimony could only hurt (defendant's) cause." Grimes v. United States, 444 F. Supp. 78, 81 (S.D.N.Y. 1993) (explaining why counsel may not have called defendant's wife as an alibi witness); see, e.g., Henry v. Poole, 409 F.3d 48, 65 (2d. Cir. 2005) (describing how counsel's pursuance of an

alibi, where alibi witness's testimony appeared to be false, constituted evidence of the defendant's guilt).

### b.    Application

Petitioner argues that counsel was ineffective due to his failure to call Lluesma as a witness.  Nonetheless, petitioner fails to demonstrate that counsel's decision was unjustifiable or lacked a strategic purpose.  In fact, counsel attempted to have Lluesma testify before the Grand Jury, and even after the indictment, spoke personally with Lluesma.  (PJH 75-77).  Ultimately, however, counsel determined that the alibi defense was strategically unsound and "too dangerous to use." (Id. at 75-77, 80).

Specifically, trial counsel cites the following factors: (1) Ms. Lopez, the woman on whose roof petitioner had allegedly been working, identified another employee of Lluesma's hardware store -- and not petitioner -- as her roofer on that date; (2) even if Lluesma correctly identified Ms. Lopez's residence as the place of the roofing job, his testimony would still place petitioner in the "same block where the robbery took place at the time and date of the robbery"; and (3) counsel was concerned that a jury would not find Lluesma credible given his forty-year friendship with petitioner and Lluesma's past burglary conviction.  (Id. at 78-79, 109).  Based on these factors, counsel determined that "the only defense that was viable at trial [was] that [Cruz] had mistakenly identified [petitioner] as one of the perpetrators."  (Id. at 116).

Indeed, the alibi defense was a weaker argument that counsel winnowed out. Accordingly, the decision not to present an alibi defense did not fall below an objective standard of reasonableness.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because petitioner, has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2254 (as amended by AEDPA). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated:    New York, NY
          July 17, 2007

DENNY CHIN
United States District Judge

- 37 -